Alvin P. Herman, et al., on Behalf of Themselves and Other Clients of Alvin P. Herman and Theodore Tannebaum, Who Have Claims Pending Against Assureds of Prudence Mutual Casualty Company, and Alex Cason, Plaintiffs-Appellants, v. Prudence Mutual Casualty Company, George F. Barrett, Urban Service Bureau, Inc., and William Warren, Defendants-Appellees.

Gen. No. 52,644.

First District, First Division.

February 19, 1968.

Rehearing denied March 18, 1968.

Ronald L. Cohen, of Chicago (Terrence F. MacCarthy, of counsel), for appellants.

Carey, Filter, Murray & White, and Schaller, Reilly & Cassidy, of Chicago (James C. Murray and Robert P. Freeman, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a three-count complaint seeking injunctive relief and damages, plaintiffs alleged that defendants conspired to induce breaches of 92 of plaintiffs' attorney-client relationships and procure fraudulent settlements in personal injury claims pending against assureds of defendant insurance company. The trial court sustained defendants' motion to strike and dismissed the complaint.

Plaintiffs, asserting a substantial constitutional question, appealed directly to the Supreme Court, which found it had no jurisdiction on the direct appeal and transferred the cause to this court. From this we presume the Supreme Court determined either that no constitutional questions were involved or that they were not material to the disposition of the appeal. City of Chicago v. Berg, 48 Ill App2d 257, 199 NE2d 49 (1964).

Substantially, the issue on appeal is whether the complaint states a cause of action to show that defendants entered into a conspiracy among themselves to interfere wrongfully and maliciously with contractual rights and fraudulently induce clients of plaintiffs, Herman and Tannebaum, lawyers, to breach their contracts.

In sum, the allegations of the complaint show that plaintiffs, Herman and Tannebaum, are lawyers, and the other plaintiffs are their clients who have pending claims against assureds of defendant Prudence Mutual Casualty Company.

Defendant Barrett, a lawyer and a director of Prudence, is primarily engaged in defending claims asserted against persons insured by Prudence. Defendant Urban Service Bureau, Inc., is an Illinois corporation engaged in

the adjustment and settlement of claims for insurance companies and attorneys. Defendant Warren, not a lawyer, is employed by Prudence, Barrett and Urban to adjust, settle and investigate accident claims.

Count I of the complaint is brought by Herman and Tannebaum. It alleges the undertaking by these plaintiffs, under attorney-retainer employment contracts, to represent some 92 persons with claims against the assureds of Prudence, and the filing of lawsuits in 43 of these cases. In each of these claims, Herman and Tannebaum "sent or caused to be sent to each of the respective defendants, in all cases Prudence's assureds, a Notice of Attorneys' Lien . . . . All said Notices of Attorneys' Liens were forwarded to Prudence and Barrett," and in all these claims, Herman and Tannebaum, "as attorneys for the claimants and plaintiffs, [have] discussed and attempted to negotiate settlements of said claims with Prudence and Barrett."

Paragraph 25 of the complaint alleges that following the entry of a verdict against an assured of Prudence in a suit in which the plaintiff was represented by Herman and Tannebaum, "Prudence and Barrett have conspired and are presently conspiring among themselves and with Urban and Warren to maliciously, unethically and illegally defraud Herman's clients into prematurely releasing their claims against Prudence's assured without advice of counsel and the opportunity of a trial."

Paragraph 26 alleges:

> "Urban and Warren have made and are presently making attempts to contact, and have contacted, either personally, by letter, telephone or other means of communication, all of Herman's clients who are party plaintiffs to this suit."

Paragraph 27 alleges:

"In furtherance of this conspiracy, Prudence and Barrett have furnished and made available to Urban and Warren the names and addresses of Herman's clients and the nature of the claims involved."

Paragraph 30 alleges:

"At the time of and since contacting Herman's clients, Prudence, Barrett, Urban and Warren, pursuant to and in furtherance of their conspiracy, have:

"(a) Maliciously and fraudulently attempted to induce, are presently inducing or have in-induced or otherwise purposely caused Herman's clients to discontinue their business relationships with Herman;

"(b) . . . caused Herman's clients to breach or terminate their respective contracts with Herman;

"(c) . . . interfered with Herman's occupation and business expectancies and Herman's clients' claim expectancies;

"(d) Participated in the unauthorized practice of law in violation of Chapter 13, Section 1, Illinois Revised Statutes (1965);

"(e) Violated the Canons of Professional Ethics of the Illinois State Bar Association, specifically Canon 9 thereof, which reads as follows:

"'A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel. It is incumbent upon the lawyer most particu-

larly to avoid everything that may tend to mislead a party not represented by counsel, and he should not undertake to advise him as to the law.' "

In Count II, plaintiffs Acino and Lindsey, individually and as representatives of 92 persons who have contractually employed and retained Herman to prosecute or settle their claims against assureds of Prudence, adopt the allegations of Count I as a class action.

In Count III, plaintiff Cason alleges that he had a claim against an assured of Prudence and employed Herman to prosecute the claim, and that Warren made contact with him and, relying on the false representations of Warren, Cason accepted the sum of $100 and signed a release tendered to him by Warren. The date and details of the transaction are set forth.

The prayer of the complaint is that the court declare malice to be the gist of the action, that a temporary writ of injunction issue against the defendants, and that they be enjoined "from contacting, writing to, speaking with or in any way communicating with clients of Attorneys, Alvin P. Herman and Theodore Tannebaum," and that "plaintiffs be awarded and have judgment as actual damages any and all sums lost or expended by said plaintiffs as a result of defendants' conduct as alleged in this Complaint, which sums are presently unknown to all plaintiffs or not yet ascertained, but which sum in the aggregate exceeds $2,000.00," and also that plaintiffs be awarded "punitive or exemplary damages against defendants in the amount of $250,000.00."

Exhibits attached to the complaint and made a part thereof include copies of letters plaintiffs Acino and Lindsey received from defendant Warren in regard to the settlement of their claims, and a list of the members of the class of persons suing as plaintiffs in Count II.

On appeal, defendants concede "that a trial court can grant relief for fraudulent and malicious conduct re-

sulting in the interference with contractual and other rights without violating constitutional guarantees of freedom of speech." However, defendants maintain that their motion to strike and dismiss the complaint was sustained for the following reasons: (1) the complaint is insufficient to state a cause of action; (2) the complaint seeks to enjoin the exercise of constitutional rights; (3) the complaint is multifarious and improperly joins parties plaintiff; and (4) the plaintiffs have an adequate remedy at law.

Defendants contend that a cause of action based upon the tort of malicious interference with contractual relationship must contain four essential elements: (1) defendant's knowledge of the existing contract; (2) the inducement; (3) the breach by the third party; and (4) damage to the plaintiff. (Northern Ins. Co. of New York v. Doctor, 23 Ill App2d 225, 161 NE2d 867 (1959).) Defendants maintain that three of the essential elements, (1) inducement, (2) breach, and (3) damage, are missing in the instant complaint. Defendants state that the complaint does not contain any allegation "that either of the instant defendants induced any client, either named as plaintiff or unnamed, of the plaintiff attorneys to terminate the attorney-client relationship or breach any contract. Rather than constituting an inducement to breach of contract, the acts of these defendants complained of in the complaint appear to have solidified the lawyer-client relationship."

Defendants also assert that neither the plaintiff attorneys nor their clients have been damaged, either by the nonpayment of fees or otherwise, by any alleged acts of the instant defendants, and, "stripped of its rhetoric and citations and despite protestations to the contrary, the sole gravamen of this complaint is to enjoin an insurance company from talking to claimants after receipt of a notice of attorney's lien. This is not the law, nor can it be the law."

■ Actions for malicious and fraudulent interference with contractual rights and business expectancies have long been recognized, commencing with Lumley v. Gye, 2 E & B 216, and in Illinois, commencing with Doremus v. Hennessy, 176 Ill 608, 52 NE 924 (1898). In Doremus, it is said (p 614) :

> "The common law seeks to protect every person against the wrongful acts of others, whether committed alone or by combination, and an action may be had for injuries done which cause another loss in the enjoyment of any right or privilege or property. No persons, individually or by combination, have the right to directly or indirectly interfere or disturb another in his lawful business or occupation, or to threaten to do so, for the sake of compelling him to do some act which, in his judgment, his own interest does not require. Losses willfully caused by another, from motives of malice, to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill and credit, will sustain an action. It is clear that it is unlawful and actionable for one man, from unlawful motives, to interfere with another's trade by fraud or misrepresentation, or by molesting his customers or those who would be customers, or by preventing others from working for him or causing them to leave his employ by fraud or misrepresentation or physical or moral intimidation or persuasion, with an intent to inflict an injury which causes loss."

Plaintiff cites Gordon v. Mankoff, 146 Misc 258, 261 NYS 888 (1931), as particularly in point here. There, it is said (pp 889, 890) :

> "It is unquestioned that a client has the right to terminate the relationship of attorney and client at any time, with or without cause. That right is

afforded him by the law because of the peculiar nature and character of the relationship, which in its very essence is one of trust and confidence. It is a right for the benefit of the client, and is intended to save him from representation by an attorney whose services he no longer desires, an obviously sound and salutary doctrine. But, while that relationship continues, it is a contract which must be respected like any other contract, and, because the law gives the client the right to terminate the relationship at will, is no justification for maliciously inclined third persons to disrupt it while it exists. 'The law does not permit the client to cheat his attorney.' Pound, J., In re Levy, 249 NY 168, 170, 163 NE 244. In the exercise of a free will, Mankoff was entitled to end his contract with the plaintiff at any time; but the charge here, sounding in tort, is that the defendants, with malicious intent, induced him to do so, and that same was brought about by their confederated procurement. The defendants argue, in attacking the second cause of action, that, because Mankoff had the legal right at any time to terminate his retainer of the plaintiff, any acts of the defendants, even though maliciously motivated in bringing about any such termination, are not actionable. They invoke the rule that a malicious motive does not make unlawful an act which by itself is lawful. This argument overlooks the gravamen of both causes of action, namely, that Mankoff did not exercise his right to end the relationship with the plaintiff, but that this was brought about by the unlawful institution of the defendant."

In Pilurs v. Elco Const. Co., 16 Ill App2d 543, 149 NE2d 104 (1958) (Abst.), this court said:

"To persuade a person to break his contract may not be wrongful in law or in fact, but if the persua-

231

sion be used for the purpose of injuring the plaintiff and inducing the breach, it is actionable if injury ensues from it, and one who has wrongfully induced a breach of contract cannot claim that the plaintiff, in an action against him therefor, is not damaged because he has a cause of action for the breach against the other party to the contract. . . .

"All persons who unite to induce a breach of contract are jointly and severally liable for the damage to the party injured thereby."

It is stated in 86 CJS, Torts, § 44:

"The interference by a third person with a contractual relationship, including interference with the contract without inducing a breach, as for example, by injuring persons so that they may be disabled to perform, or by destroying or damaging property which is the subject matter of the contract, or by doing other acts which make the performance more burdensome, difficult or impossible, or of less or no value to the person entitled to performance, may constitute an actionable tort, under the theory that such interference constitutes an invasion of the property rights of the parties to the contract."

A motion to dismiss admits facts well pleaded but not conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. Pleadings are construed most strongly against the pleader, but facts well pleaded must be taken as true. (Washington v. Courtesy Motor Sales, Inc., 48 Ill App2d 380, 199 NE2d 263 (1964).) The cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which will entitle plaintiff to recover. (Louis v. Barenfanger, 81 Ill App2d 104, 110, 226 NE2d 85 (1966).) Under the Civil Practice Act, pleadings are to

be liberally construed with a view toward doing substantial justice between the parties, and no pleading is to be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim. (Crosby v. Weil, 382 Ill 538, 548, 48 NE2d 386 (1943).) The pleader should allege the ultimate facts to be proved and not allege the evidentiary facts which tend to prove the ultimate facts. (Levinson v. Home Bank & Trust Co., 337 Ill 241, 244, 169 NE 193 (1929).) "There is no clear distinction between statements of 'evidentiary facts,' 'ultimate facts,' and 'conclusions of law.' There is no provision in the Civil Practice Act defining a conclusion, and a precise definition as to what constitutes conclusions of law is impossible." Nichols, Illinois Civil Practice, Revised Edition (1961), Vol 2, § 777, p 27.

As to Count I, we believe the complaint shows that it contains all the essential allegations necessary to set forth a cause of action for wrongfully inducing a breach of contract based on a conspiracy participated in by the defendants. It shows defendants' knowledge of the existing attorney-client relationship, inducements made to the plaintiff clients to violate their contracts with the plaintiff lawyers, at least one breach, and acts which make the performance of the representation of clients "more burdensome, difficult or impossible." Actual damages are asserted as exceeding $2,000, and though the origin of these damages might be specified more exactly, we cannot say that the complaint is fatally defective for failure so to do.

As to Count II, we consider the allegations sufficient to show that the actions of defendants interfered with the performance of plaintiffs' contractual obligations to each other, as well as to make this performance more difficult and more costly. We are not persuaded that the complaint is multifarious. It shows a

series of transactions "forming one course of dealing, all tending to one end, so that one connected story can be told of the whole." It is possible in this suit for the court to "determine questions incidental to the determination of the main controversy" and grant all relief incidental to the accomplishment of the main object of the complaint. White v. Macqueen, 360 Ill 236, 246, 195 NE 832 (1935).

 As to Count III, plaintiff Cason asserts that he had a claim against an assured of Prudence and employed the plaintiff attorneys to prosecute or settle the claim; that Warren, pursuant to and in furtherance of Warren's conspiracy with Prudence, Barrett and Urban, made contact with him and advised him not to notify his attorneys, and fraudulently explained the legal relationship and nature of the release which Cason signed on January 27, 1966, in exchange for a Prudence draft in the sum of $100. Plaintiff Cason also asserts that Warren's representations were false and were made to defraud him of his chose in action and effectively deny him his right to prosecute his suit for personal injuries. We conclude that Count III states a cause of action.

 Defendants also contend that a conspiracy cannot exist between agent and principal. (John Deere Co. v. Metzler, 51 Ill App2d 340, 201 NE2d 478 (1964).) They argue that because the complaint alleges that Warren is both an employee of Prudence and also the alleged unauthorized practitioner of the law that the complaint is defective. We do not find this argument persuasive. In the John Deere case, the court stated (p 355) :

> "In civil cases the gravamen is not the conspiracy or combination but the unlawful acts committed in pursuance to the conspiracy or civil wrong resulting in damages."

And at page 356:

234

"It was said [in] Hyman v. Burmeister, 216 Ill App 98, 'If a plaintiff fail in the proof of a conspiracy or concerted design, he may yet recover damages against such of the defendants as are shown to be guilty of a tort, resulting in damages to him. The charge of conspiracy, where unsupported by the evidence, will be considered mere surplusage, not necessary to be proved to support the action. . . .

" 'The common law seeks to protect every person against the wrongful acts of others, whether committed alone or by combination, and an action may be had for injuries done which cause another loss in the enjoyment of any right or privilege or property. No persons, individually or by combination, have the right to directly or indirectly interfere or disturb another in his lawful business or occupation, or to threaten to do so, for the sake of compelling him to do some act which, in his judgment, his own interest does not require. Losses wilfully caused by another, from motives of malice, to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill and credit, will sustain an action. . . .'

". . .

"Thus we conclude that if the acts of John Deere were tortious in that they consisted of a design and purpose to intentionally do a wrongful harm and injury resulting in fact in an injury they are actionable without proof of a conspiracy so to do."

 Defendants also contend that sufficient facts to constitute the unauthorized practice of law are not pleaded. We do not agree. See Smith v. Illinois Adjustment Finance Co., 326 Ill App 654, 658, 63 NE2d 264 (1945).

■■ Defendants further contend that an adequate remedy at law is available to plaintiffs. Although plaintiffs may have a remedy at law for damages, we are not persuaded that their legal remedy is adequate here, because we are of the opinion that plaintiffs' prayer that defendants be enjoined from interference with their contractual arrangements and that they be enjoined from asserting releases signed by plaintiffs may call for equitable relief by the trial court in its exercise of its broad discretion.

Viewing the complaint in its entirety, we believe the three counts state causes of action and contain "such information as reasonably informs" defendants of the nature of the claims they are called upon to meet. (Civil Practice Act, § 42.) For the reasons given, the order striking plaintiffs' complaint and dismissing the action as to all defendants is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

BURMAN, P. J. and ADESKO, J., concur.