**P. V. JACKSON, III, Plaintiff,**

v.

**TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Defendant.**

**Linda Sue EDWARDS, Plaintiff,**

v.

**TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Defendant.**

**Civ. A. Nos. 74-283, 74-284.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Nov. 13, 1975.

⚷143

988

Joseph L. Lackey, Jr., Nashville, Tenn., P. V. Jackson, III, in pro per, for plaintiffs.

Douglas Fisher, Nashville, Tenn., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

The above-styled actions were heard by the Court without a jury and taken under submission on the 18th day of September 1975. After hearing the evidence, examining the exhibits, the pleadings, the stipulations, briefs and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. By stipulation these actions were consolidated for trial. The plaintiff, P. V. Jackson, III, as well as the plaintiff, Linda Sue Edwards, are resident citizens of the State of Tennessee. The defendant is a corporation organized under the laws of the State of Connecticut.

The plaintiff, P. V. Jackson, III (Jackson) is an attorney licensed to practice in the State of Tennessee. He alleges in his complaint that he was employed by the plaintiff Edwards to represent her for injuries she received in an automobile accident and that the defendant, Travelers Insurance Company of Hartford, Connecticut (Travelers) induced the breach of this contract, thereby causing damage to Jackson. The plaintiff, Linda Edwards, asserts that the defendant, through its agents, are guilty of fraud, misrepresentation and deceit in the procuring of a settlement entered into by her and Travelers. The settlement in question arises out of an automobile accident wherein the plaintiff was a guest passenger in a vehicle whose insurance carrier was Travelers. In defense, Travelers assert that they did not commit fraud, misrepresentation or deceit regarding their settlement agreement with Mrs. Edwards. In answer to the allegations raised by Jackson, the defendant denies that Jackson had a contract to represent the plaintiff. Moreover, the defendant alleges that if such an agreement existed between Jackson and Mrs. Edwards that Travelers in no way induced the breach of such an agreement and also that such a contract is void as against public policy.

2. The plaintiff, Linda Edwards, was seriously injured on January 15, 1972, while riding as a guest passenger in an automobile driven by William Gary Cooper (Cooper) and owned by Richard D. Rutherford when the vehicle being driven by Cooper ran off Nolensville Road in Nashville and collided with an electric utility pole. Prior to the accident which occurred at approximately 1:50 A.M., the plaintiff had been on a date with Cooper, a married man.[1] Earlier that evening Cooper and the plaintiff left her apartment and proceeded to the King of the Road Motel in Nashville to await the arrival of Cooper's parents who were expected to meet them in the cocktail lounge. It is undisputed that both the plaintiff and Cooper consumed alcoholic beverages throughout the evening.

3. Shortly after the arrival of Cooper's parents, the party of four frequent-

---

1. At the time of the accident plaintiff was also married, however, she and her husband had been separated for several months and her husband had filed divorce proceedings, though no decree had at that time been issued. In the petition for divorce one of the grounds was adultery and Cooper was named as the co-respondent.

ed another establishment on Dickerson Road in Nashville where they could dance and drink beer. Plaintiff testified that she and Cooper danced most of the evening and that Cooper drank "off and on" until they departed around midnight. After leaving the lounge, Cooper, his parents and the plaintiff returned to the King of the Road where Cooper had left his car. After driving his parents to the parking lot, Cooper and the plaintiff entered his vehicle and started toward the plaintiff's apartment. Immediately after leaving the parking lot, Mrs. Edwards testified that she fell asleep. As the vehicle was traveling south on Nolensville Road, a police car on routine patrol heppened to be directly behind their vehicle. According to the testimony of officers Champion and Minton of the Metropolitan Police Department, they were following about twenty-five feet behind the vehicle when they were notified by radio to proceed to the scene of another accident. As they attempted to pass Cooper's vehicle, the automobile veered to the left side of the road and then swerved at a very sharp angle to the right, striking a utility pole. Upon impact the plaintiff sustained serious head injuries. The driver received minor injuries and was later released from the Nashville General Hospital.

4. Subsequently, Cooper was taken to the Metropolitan Police Department where he was given an Alco-Analyzer test to determine the alcoholic content of his blood. In Tennessee there is a statutory presumption that the driver of a vehicle who registers as much as .10 per cent on such a test is considered to be under the influence of an intoxicant. The test conducted on Cooper registered .19 per cent of alcohol. The father of the driver, Charles Cooper, testified that his son did not exhibit any sign of intoxication at the time his son drove his automobile to the parking lot. The plaintiff testified that although Cooper had been drinking throughout the evening, it did not appear to her that Cooper was intoxicated. Notwithstanding this, the Court finds the test result to be accurate.

5. As stated previously, the vehicle involved in the accident, a 1962 Dodge, was owned by Cooper's employer, Richard D. Rutherford. It is further stipulated that on the date of the accident there was in full force and effect a liability insurance policy written by Travelers in the amount of $50,000.00 covering the vehicle. Rutherford testified that on the night of the accident, Cooper was not using the automobile on any business of his employer. However, Rutherford further testified that Cooper was permitted to use the vehicle for business and pleasure and that Rutherford had placed no restrictions on Cooper pertaining to the operation of the automobile. Based on the evidence presented at trial, the Court finds that at the time of the accident Cooper had the permission and consent of his employer to use the automobile.

6. Immediately after the accident, the plaintiff was taken to Nashville General Hospital where she underwent extensive medical treatment. Due to the seriousness of her injuries she remained in the hospital from January 15, 1972, until March 8, 1972. The neurologist, Doctor Ray W. Hester, who treated the plaintiff, testified that Mrs. Edwards received brain stem damage as a result of the accident and is paralyzed in her left arm and left leg, and that she is 100% permanently disabled. In addition, the plaintiff received damage to her eyes and corrective surgery was later performed. Doctor Wallace H. Faulk, an ophthalmologist, who has operated twice on Mrs. Edwards testified that her eyes will be permanently inverted. The plaintiff now walks with the use of a walking cane and her speech is impaired. At the time of the accident Mrs. Edwards was twenty-four years of age and was gainfully employed as a secretary with the Murray Ohio Company. Because of her accident the plaintiff cannot resume her employment.

The Court finds that Mrs. Edwards is permanently and totally disabled.

7. In the ensuing months several events and transactions occurred between Mrs. Edwards, Jackson and Travelers. Since the heart of this litigation centers primarily on these transactions and dealings and since these factual issues are of critical importance as to the determination of this lawsuit, a sequel of factual events is deemed necessary.

8. THE INSURANCE ADJUSTOR: Upon notification of the accident involving one of their insured vehicles, the Nashville Office of Travelers assigned one of its claim representatives to the case. Mr. Ray Davidson, a claim representative (adjustor) for Travelers received a report on January 17, 1972, to the effect that there had been an accident and the driver was to call and give a signed statement. He also noted in his file that the Plaintiff Edwards was in very bad condition and that both driver and plaintiff were separated and waiting on divorce. (Pl. Ex. 2)[2] On January 19, 1972, Davidson noted that he had been in contact with the plaintiff's mother, Mrs. Margaret Sanderson, who had agreed to select the "advance pay system" for her daughter.[3] Davidson testified that it was the intent of Travelers in adopting this plan to discourage litigation and to keep potential claimants from obtaining attorneys to represent them in conjunction with their claims. On February 17, 1972, Davidson visited the plaintiff in the hospital but due to her condition was unable to communicate with her.

9. THE ATTORNEY: Somewhere between March 1 through March 6, Jackson testified that he visited the plaintiff in the hospital. According to Jackson, he had been recommended by Faye Smithson a friend of Mrs. Edwards. It was during this visit that the plaintiffs have asserted that Mrs. Edwards agreed to employ Jackson as her attorney. The plaintiffs admit that there was no written contract at any time pertaining to Jackson's representation of Edwards. The plaintiffs further admit that the exact details of employment as to fees were not discussed; however, Mrs. Edwards testified that she was aware that "the fee would be one-third." This testimony was also corroborated by Jackson. In addition, Fay Smithson, who was present during the plaintiffs' conversation, testified that Jackson's fee arrangement would be one-quarter attorney's fee if the matter was settled out of court and one-third of the amount received in the event the case went to trial. At the conclusion of their discussion Jackson testified that Mrs. Edwards signed the following authorization: (Pl. Ex. 3)[4]

"TO WHOM IT MAY CONCERN:

I hereby authorize you to release to my attorney, P. V. Jackson, III, any and all medical information he may request concerning your treatment of injuries received by Linda Edwards on January 15, 1972.

/s/ Linda Edwards
Linda Edwards

/s/ Faye Smithson
Faye Smithson, Witness"

---

2. References preceded by "Pl.Ex." or "Def.Ex." are to the exhibits admitted into evidence during trial on behalf of plaintiff or defendant respectively.

3. The advance pay system is an optional mode of payment made available by Travelers wherein the insurance company enters into an agreement with the injured party that the insurance company will make advance payments for medical bills and other expenses arising out of the accident without requiring the claimant to sign a release prior to the receiving of these payments.

4. There is conflicting testimony as to the exact date and the number of authorization forms signed by the plaintiff. Moreover, sev-

10. On March 9, 1972, Jackson wrote to Doctor Hester. In this letter Jackson enclosed the medical release form requesting medical information on Mrs. Edwards and also seeking information as to whether the plaintiff would make a complete recovery. (Pl. Ex. 11) Doctor Hester responded to Jackson's letter on March 14, 1972, wherein he outlined Mrs. Edwards' injuries along with his prognosis pertaining to her recovery (Pl. Ex. 10) [5]

11. On March 15, 1972, after obtaining the accident report, (Pl. Ex. 13) Jackson forwarded letters to the police officers who had witnessed the accident and asked to discuss this matter with them. (Pl. Ex. 12)

12. JACKSON VERSUS TRAVELERS: During the month of March 1972, the following letters were exchanged between the parties: (Pl. Ex. 15)

March 13, 1972

Travelers Insurance Co.
Claims Department
110–21st Avenue, South
Nashville, Tennessee

   Re: Richard D. Rutherford—Insured
    William Cooper—Driver
    Your file No.—101 AB 4805091

Gentlemen:

Please be advised that this office represents Mrs. Linda Sue Edwards, a guest passenger in the automobile owned by and driven by the parties above named. I will be happy to talk to you about this case at any time.

        Sincerely,

        /s/ P. V. JACKSON, III

Shortly thereafter, Jackson received the following letter from Travelers: (Pl. Ex. 15)

March 16, 1972

Mr. P. V. Jackson, III
Parkway Towers
404 James Robertson Parkway
Nashville, Tennessee

   Re: Richard D. Rutherford
    re: William Cooper
    D/A: 1–15–72

Dear Mr. Jackson:

I will be happy to discuss this case with you at any time, but before any negotiations will be possible, I would like to see a photo stat copy of your contract with Mrs. Linda Sue Edwards. It is our understanding that this date that Mrs. Edwards is not mentally competent enough to enter into any such contract and Mrs. Edwards is not legally divorced at this time.

---

eral authorization forms releasing this medical information were also signed by the plaintiff's mother, Mrs. Margaret Sanderson. (Pl. Ex. 14)

5. Jackson also received a follow-up letter from Doctor Hester on July 3, 1972, whereby he was informed that the plaintiff's "prognosis for complete recovery is practically nil at this time." (Pl. Ex. 10)

Please furnish this office this information and we will be happy to discuss this case.

<div style="text-align: right">

Sincerely yours,

/s/ Ray Davidson

Claim Representative

</div>

13. Upon the receipt of Davidson's correspondence, Jackson replied on March 20, 1972: (Pl. Ex. 15)

Ray Davidson
Post Office Box 1168
Nashville, Tennessee 37202

Re: Richard D. Rutherford
re: William Cooper
Date of Accident: 1–15–72

Dear Mr. Davidson:

Enclosed you will find copies of medical releases from Linda Edwards and also one from Linda's mother, which was obtained first. There is no written contract between Mrs. Edwards and myself. Upon the strength of such releases I have obtained the cooperation of her attending physician.

You are correct in your statement that Linda Edwards is still legally married, but I have not held myself out to you as representing her husband.

<div style="text-align: right">

Sincerely,

/s/ P. V. JACKSON, III

</div>

Immediately thereafter, Davidson acknowledged Jackson's letter. (Pl. Ex. 15)

<div style="text-align: right">

March 21, 1972

</div>

Dear Mr. Jackson:

This office recognizes the fact that you are representing Linda Edwards' mother Mrs. Margaret Sanderson. However, until Mrs. Linda Edwards has a legal guardian or has a legal divorce from her husband we cannot acknowledge your office as representing Mrs. Linda Edwards.

<div style="text-align: right">

Sincerely yours,

/s/ RAY DAVIDSON

Claim Representative

</div>

———◆———

14. Following this exchange of letters between Jackson and Travelers, Jackson asserts that on or about March 26, 1972, he visited Mrs. Edwards at her apartment to discuss certain matters pertaining to her case. Also present during this conversation were Brenda Patterson, a friend of Mrs. Edwards and Mrs. Mildred Norris, a registered nurse who had been employed to care for the plaintiff. There is conflicting testimony as to what was discussed during this visit. Mrs. Norris testified that the plaintiff advised Jackson that she did not want him to be her attorney since Jackson was representing her mother,

Mrs. Margaret Sanderson.[6] The plaintiffs deny that any such statement was made during their discussion. The Court finds no proof that Jackson represented the plaintiff's mother at this time or that Mrs. Edwards discharged Jackson as her attorney on this occasion.

15. MRS. EDWARDS VERSUS TRAVELERS—Davidson's file indicates that on March 27, 1972, he received a call from Cooper advising him of the plaintiff's condition and also, that an attorney had visited Mrs. Edwards' apartment and advised her to sue for $200,000.00. (Pl. Ex. 2) The following day, Cooper proceeded to Mrs. Edwards' apartment and was joined there by Davidson. (On the witness stand Davidson denied that the meeting was prearranged). Mrs. Edwards testified that Davidson informed her that Travelers could no longer pay her medical and hospital expenses along with her loss of wages if she retained Jackson as her attorney. Davidson testified that Mrs. Edwards told him that Jackson was not her attorney and at this time Davidson wrote out in longhand a statement which reads: (Pl. Ex. 2)

I am Mrs. Linda Edwards age 25 and I reside at 600 Whispering Hills Road. I am *NOT* represented by attorney P. V. Jackson, III or any other attorney. I am going to deal directly with Travelers Ins. Company. I have read the above and its true & correct.

/s/ Linda S. Edwards

witnessed   Ray Davidson
witnessed   Mildred Norris
witnessed   William G. Cooper

———◆———

In asserting that the defendant's conduct was overreaching, the plaintiffs contend that at the time Davidson offered this statement for Mrs. Edwards' signature, he was fully award that: she was 100% disabled; she had a child that was dependent upon her; she was requiring full-time nurses; she had hospital bills accumulated in excess of $7,-000.00; she had no source of income; her eyes at that time were totally inverted because she had not had the operation that straightened them to some extent; she was deformed, disfigured, emotionally distressed, and in a weakened condition both mentally and physically.

It is of particular significance that when Davidson confronted Mrs. Edwards with this alternative on March 28, 1972, he had on March 16th, only twelve days prior, written Jackson stating that Mrs. Edwards was not mentally competent to enter into a contract.

16. After Davidson obtained Mrs. Edwards signature on the above document (Pl. Ex. 2) where she allegedly agreed to discharge her attorney, Jackson testified that his secretary received a phone call from someone stating that his services were no longer needed. Jackson further testified that upon receiving this message he called Mrs. Ed-

6. Mrs. Norris' testimony was corroborated by Davidson who testified that this was the reason given to him by Mrs. Edwards as to why she discharged Jackson on March 28, 1972. The plaintiffs assert that Jackon did not represent Mrs. Sanderson at this time. The plaintiffs offered into evidence the records from the General Sessions Court of Davidson County, Tennessee which reveal that Mrs. Sanderson was charged with the offense of DWI in April of 1972 and that the trial was not held until May 1972, at which time she was represented by Jackson. (Pl.Ex. 22) Jackson asserts that this is the only time that he has represented the plaintiff's mother. The defendant has offered no evidence showing that Jackson was previously employed by Mrs. Sanderson in this litigation.

wards' apartment to inquire into this matter and was told by Mrs. Norris that his services were no longer needed. Jackson admits that he did not attempt to verify whether Mrs. Edwards had authorized such a phone call. The attorney made no attempt to contact Mrs. Edwards personally to discuss this phone conversation. Following this conversation Jackson had no further contact with the plaintiff and performed no type of legal work on her claim until January 10, 1973, when Jackson forwarded a certified letter to Mrs. Edwards indicating that her claim would expire on January 15, 1973. (Pl. Ex. 16) Due to an incorrect mailing address this letter was never received by Mrs. Edwards and was returned to Jackson. From January 15, 1973, until September 1973, there was no communication between Jackson and Mrs. Edwards. The Court is of the opinion that Jackson did at one time have a contractual agreement with Mrs. Edwards.

17. INTEROFFICE COMMUNICATION RE: THE EDWARDS' CLAIM— By August 1972, Travelers had paid the sum of $9,974.12 to or for Mrs. Edwards. Some payments were made directly to the plaintiff, some to the hospital, some to the nurses and some for various other expenses related to the accident. (Pl. Ex. 19) During the summer of 1972, Travelers Claim Department reviewed the Edwards' file in attempting to determine the amount of this claim. On June 6, 1972, claims examiner Knott of the Home Office, forwarded a memorandum to Assistant Supervisor Luther inquiring whether the company should go ahead and put up policy limits. Luther replied the following day stating that the claim was well worth $50,000.00. On June 28, 1972, Examiner Knott advised Edward Jenkins, Manager of the Claim Department in Nashville, that he had reviewed the file and had authorized $50,000.00 to

be paid and sent a form authorizing a draft to be drawn in that amount. (Pl. Ex. 2)

18. On July 21, 1972, Luther advised Jenkins that it was his recommendation that Travelers should pay an additional $25,000.00 above the $9,974.35 that had been paid for Mrs. Edwards' medical expenses. Luther further recommended that Travelers should deal directly with Mrs. Edwards and not Jackson. (Pl. Ex. 2) [7]

19. THE SETTLEMENT: After being advised of the company's policy limits, Davidson visited Mrs. Edwards at her apartment. It was during this meeting that the plaintiff testified she was told by Davidson that Travelers had paid all of her hospital bills, doctor bills, nursing and other expenses that she had incurred. Mrs. Edwards further testified that Davidson informed her that Travelers could pay an additional $25,000.00 and that would be the maximum she could receive from the defendant company. Accepting the statements made by Davidson to be correct and believing that all of her bills had been paid and that she could not receive more than $25,000.00, Mrs. Edwards agreed to the settlement. At the time she entered into this agreement, the plaintiff alleges that she was not aware that there were outstanding doctor and hospital bills. Davidson denies that he informed the plaintiff that all of her bills were paid; however, he admits that he made a settlement offer of $25,000.00 to the plaintiff. Davidson testified that his role in negotiating with the plaintiff was that of an "adversary." Since Davidson represented Travelers, he admitted that it was not his obligation to inform Mrs. Edwards that there was $50,000.00 in policy limits, nor was it his duty to advise her that she had a right to pursue a suit against the owner of the vehicle.

---

7. The pertinent section in Luther's memorandum reads as follows: "Mack also determined that Mr. P. V. Jackson, III was not representing Linda nor her husband in the divorce proceedings. As we have Linda's statement that Mr. Jackson is not representing her in any matter, I feel that we should deal directly with Linda. It is my suggestion that we settle this claim for another $25,000.00 on top of what we have paid." (Pl.Ex. 2)

20. Subsequently, the settlement and papers were drafted and signed by Mrs. Edwards on August 15, 1972. Included in the settlement was a provision whereby $10,000.00 of the $25,000.00 was held in escrow to be paid to the plaintiff in the event that her husband did not institute a lawsuit on his behalf against William Cooper and/or Richard D. Rutherford. (Pl. Ex. 4)[8]

21. THE EVALUATION OF THE EDWARDS' CLAIM: In determining what type of settlement would be made with the plaintiff, Travelers consulted a Mr. S. McPheeters Glasgow, a Nashville attorney. Mr. Glasgow was not furnished with complete medical information on the plaintiff. He was not given further medical information on Mrs. Edwards after March 1972. He was not aware of the exact amount of expenses that the plaintiff had incurred. Moreover he was not informed that the plaintiff was permanently and totally disabled. Mr. Glasgow testified that he spent approximately two hours on the Edwards' file prior to making his ultimate determination. Admittedly, the information furnished Mr. Glasgow was not complete. Travelers' file on the Edwards claim was used for reference by many witnesses during the trial. The Court observed that the file was at least two to three inches thick. When Mr. Glasgow testified he referred to the file which Travelers had furnished him from which to make his evaluation. It is obvious to the Court that the Travelers did not furnish Mr. Glasgow with all the information available to it which was necessary to enable him to evaluate the case. It is also obvious that Mr. Glasgow's evaluation would have been different had he been fully advised.

22. In summation, the Court finds that the plaintiff Jackson has proved by a fair preponderance of the credible evidence that the defendant knowingly and wrongfully interfered with the attorney-client relationship between Jackson and Edwards in an effort to induce the breach of said contract, thereby causing damage to Jackson. The Court further finds that the plaintiff, Linda Edwards, has proved by a fair preponderance of the credible evidence that the defendant, through its agents, was guilty of fraud, misrepresentation and deceit in procuring the settlement agreement with the defendant.

## CONCLUSIONS OF LAW

On the basis of the foregoing facts, the Court makes the following Conclusions of Law:

1. The Court has jurisdiction by reason of diversity of citizenship among the parties and the amount in controversy. 28 U.S.C. § 1332.

2. Travelers assert in defense that the plaintiff Edwards, under the facts as alleged, fails to state a cause of action for which relief can be granted. Without a lengthy discussion of the precedents, suffice it to say that an action for fraud, deceit and misrepresentation is well recognized in the State of Tennessee. *Texas Tunneling v. City of Chattanooga*, 329 F.2d 402, 406 (6th Cir. 1964); *Crouch v. Gray*, 154 Tenn. 521, 536, 290 S.W. 391, 395 (1926); *Shwab v. Walters*, 147 Tenn. 638, 644, 251 S.W. 42, 44 (1922); *Derry v. Peek*, 14 App. Cas. 337, 58 L.J.Ch. 864 (1889). A party seeking to sustain an action of deceit must prove that a false representation has been made knowingly, or without belief in its truth, or without caring whether the representations made were true or false. *Cumberland Portland Cement Company v. Reconstruction Finance Corporation*, 140 F.Supp. 739, 750–751 (E.D.Tenn.1953), aff'd 232 F.2d 930 (6th Cir. 1956); *Shwab v. Walters, supra.* Moreover, in order to constitute fraud the purported representations must have

8. Mrs. Edwards' husband did not file suit and the $10,000 was paid to Mrs. Edwards after the statute of limitations had run. It is not clear from the testimony as to whether Mrs. Edwards was paid interest on this amount. It was clear that the costs of the escrow agent were deducted from this amount.

been relied upon as an existing fact, the representations must have been false, and must have been material so as to determine the conduct of the parties seeking relief. *Dozier v. Hawthorne Development Co.,* 37 Tenn.App. 279, 262 S.W.2d 705, 709 (1953). In sum, the party alleging the fraud must show proof of fraud; that it, fraud is never presumed but must be proven by the party asserting the fraud. *Pipkin v. Lentz,* 49 Tenn.App. 206, 354 S.W.2d 87, 94, (1961); *Bevins v. Livesay,* 32 Tenn. App. 1, 221 S.W.2d 106, 109 (1949). In the instant case, the defendant asserts that the activity of an insurance agent in talking to a plaintiff about a claim from time to time during a period which she is grieved and worried and in pain by reason of her condition is not an act of fraud upon the part of the agent. *Lee v. Drabkin,* 197 Tenn. 376, 273 S.W. 2d 473, 475 (1954).[9] Notwithstanding the defendant's contention, the Court finds that the defendant, through the acts of its agents, made false representations to the plaintiff in the procurement of a settlement agreement and such conduct on the part of the defendant insurance company constitutes actionable fraud. (See Findings 15, 19)

3. The defendant alleges that Mrs. Edwards cannot set aside the settlement agreement upon a theory of duress because the plaintiff has not tendered back to Travelers the amount received in settlement, and that such a tender is a condition precedent to her right to repudiate the accord and satisfaction of her action in signing the release.[10]

The pertinent statute upon which the parties rely, T.C.A. § 23–3002, reads:

"Recission of fraudulent or erroneous settlements—Where a compromise settlement of a claim for damages resulting from personal injuries has been brought about by fraud or mistake, such settlement may be rescinded without return of the consideration to the party released, but such consideration paid shall constitute a credit to apply in satisfaction of any judgment procured on account of such personal injuries."

In construing this statute it is clear that the Tennessee Legislature's intention is to allow the defrauded party to withhold tender, therefore, the Court finds that the plaintiff is not required to return the consideration received from the defendant as a condition precedent to the maintenance of this action. However, the Court finds that credit be given to the defendant company for the amount paid to the plaintiff in the sum of $34,974.-35.

9. The case presented here is clearly distinguishable from *Lee v. Drabkin, supra,* upon which the defendant relies. In *Drabkin,* the Tennessee Supreme Court held that the defendant insurance company was guilty of no fraudulent conduct. 273 S.W.2d at 475. However, the factual distinctions are strikingly dissimilar in that act of insurance agent which were relied on by the plaintiff-administratrix as constituting fraud were known to the plaintiff. In addition the plaintiff was represented by counsel in court concerning the settlement agreements and the trial judge asked the plaintiff whether she was satisfied with the two judgments that were to be entered, to which she replied in the affirmative. Finally, as to plaintiff's condition, in the *Drabkin* case, the injuries were not nearly so severe as in the instant case. The principal injury in the *Drabkin* case was a broken arm.

10. The Tennessee Supreme Court has held that one who seeks to avoid an accord and satisfaction of an agreement on the ground that such agreement was obtained by fraud, must as a condition precedent, tender back the money received under the executed agreement sought to be avoided. *Gibbons v. Mutual Benefit Health & Accident Association,* 195 Tenn. 339, 259 S.W.2d 653, 654 (1953); *Glover v. Louisville & Nashville R.R. Co.,* 163 Tenn. 85, 40 S.W.2d 1031 (1931). However, in view of the modification of T.C.A. § 23–3002 by the Tennessee legislature, the Court concludes that tender of the amount paid is not a condition precedent to this cause of action. This statute recently construed by the Tennessee Supreme Court recognizes that in tort actions T.C.A. § 23–3002 permits recission of settlements without tender of the amount previously received under the settlement. *Cordell v. Sky Rides of America,* 218 Tenn. 485, 404 S.W.2d 488, 489–490 (1966); *Lindsey v. Hunt,* 215 Tenn. 406, 387 S.W.2d 344, 346 (1964).

4. The defendant further contends that the plaintiff Edwards, under the doctrine of equitable estoppel, is estopped to assert in this action that Jackson was her attorney, because Edwards acknowledges the signing of an instrument on March 28, 1972, representing to the Travelers that neither Jackson nor any other attorney was representing her, and thereafter received money from the defendant upon the basis of such representation. Generally, where a party has been misled by an untruth propounded by another, and acted to her detriment in reliance upon the misrepresentation, the misleading party will be estopped to show that the true facts are contrary to those the party first propounded. *Duke v. Hopper*, Tenn. App., 486 S.W.2d 744, 748 (1972); *Obion County v. McKinnis*, 211 Tenn. 183, 364 S.W.2d 356, 357 (1963). However, before a party can claim an estoppel, there must be on the part of the claiming party: (a) lack of knowledge without fault of the true facts, (b) reliance upon the untrue facts, and (c) action based on the untrue statement or misrepresentation. 486 S.W.2d at 748. Based on the evidence as presented at trial, the Court finds that Edwards was not the misleading party in this action. (See Finding 15) The Court further finds that the essential elements needed to invoke estoppel are lacking. Therefore, the plaintiff is not estopped to proceed in this lawsuit.

5. Defendant asserts that Edwards' claim as to the injuries and damages she received as the result of alleged fraudulent actions, misrepresentations and deceit of Travelers is barred by the one year statute of limitations T.C.A. § 28–304.[11] The defendant's theory is that the representations allegedly made to the plaintiff were made between March and August of 1972, and that the present action was not commenced until June 26, 1974. Plaintiffs aver that said misrepresentations occurred during March and August 1972, however, Mrs. Edwards was first advised of her cause of action in September of 1973. Plaintiffs further assert that T.C.A. § 28–304 is not applicable to this action, and since there is no statute of limitations involving an action for fraud, misrepresentation and deceit in this state, the ten year statute of limitations should apply.[12] As a general rule mere failure of a person to discover the existence of a cause of action does not prevent the running of the statute. *Ray v. Scheibert*, Tenn. App., 484 S.W.2d 63 (1972); *Clinard v. Pennington*, 59 Tenn.App. 128, 438 S.W. 2d 748, 752 (1968). Moreover, "unawareness of facts or law, alone, does not justify suspending the operation of the statute." *Morgan v. Koch*, 419 F.2d 993, 997 (7th Cir. 1969). Although an action is not commenced within the applicable period of limitations established by statute, the remedy of equitable estoppel is made available to preclude a defendant from pleading the statute of limitations where the plaintiff seeks such estoppel on the ground that the defendant, or his agent, through fraud, misrepresentation or deception induced the plaintiff to delay timely action. *Scarborough v. Atlantic Coast Line Railroad Co.*, 178 F.2d 253, 258 (4th Cir. 1949), cert. den. 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343 (1949); *Aetna Life Insurance Co. v. Moyer*, 113 F.2d 974 (3rd Cir. 1940). The Court recognizes the long series of decisions in our law which hold that fraud does not toll the running of a statute of limitations. However, in rendering their decisions, courts

---

11. T.C.A. § 28–304 reads: Personal tort actions—Statutory penalties—Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, criminal conversation, seduction, breach of marriage promise, and statutory penalties, shall be commenced within one (1) year after cause of action accrued.

12. T.C.A. § 28–310 provides in full: "Actions against guardians, executors, administra-tors, sheriffs, clerks, and other public officers on their bonds, actions on judgments and decrees of courts of record of this or any other state or government, and *all other cases not expressly provided for, shall be commenced within ten (10) years after the cause of action accrued.*" (Emphasis added)

must rely on the particular facts and circumstances.[13] In *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232–233, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959) Justice Black said:

"To decide this case we need look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse cases by both law and equity courts, *and has frequently been employed to bar inequitable reliance on statutes of limitations.*" (Emphasis added)

After carefully considering the evidence, the Court finds that the plaintiff's action has not been barred by T.C.A. § 28–304.

6. The plaintiff Jackson asserts that the defendant induced the breach of his contingent fee with Mrs. Edwards and therefore, Jackson seeks damages under T.C.A. § 47–15–113.[14] The defendant contends that the treble damages statute contemplates a severe penalty and should be strictly construed and that there is insufficient proof in the instant case to support the plaintiff's claim for damages. *Emmco Insurance Company v. Beacon Mutual Indemnity Company*, 204 Tenn. 540, 322 S.W.2d 226, 231 (1959). The Tennessee treble damage statute, T.C.A. § 47–15–113, is but a statutory enactment of the common law tort action, expressly setting treble damages in lieu of punitive damages. *Koehler v. Cummings*, 380 F.Supp. 1294, 1305 (M.D.Tenn.1974); *Swift v. Beaty*, 39 Tenn.App. 292, 282 S.W.2d 655 (1954). Therefore, in considering the intention of the Legislature in passing

the statute relied on, the Court is of the opinion that it was designed to serve as a protection against wilful wrongs. *Emmco, supra,* 322 S.W.2d at 231. The defendant avers that it is not unlawful or legally wrong for an insurance company with a direct interest in a claim to enter into a settlement, despite the fact that the terms of the settlement may compromise the alleged contractual obligations of the settlor. *Emmco, supra* 322 S.W.2d at 230. Moreover, the defendant asserts that it is the public policy of this state that a settlement may be made directly with a party represented by an attorney and without the attorney's consent. *Cummings v. Patterson*, 59 Tenn.App. 536, 444 S.W.2d 640 (1968). Notwithstanding the assertions raised by the defendant, it is generally recognized that wrongful interference with a contractual or business relationship of another gives rise to tort liability. *Employers Liability Assurance Corporation v. Freeman*, 229 F.2d 547 (10th Cir. 1955); *State Farm Insurance Company v. Gregory*, 184 F.2d 447 (4th Cir. 1950); *State Farm Mutual Insurance Company v. St. Joseph's Hospital*, 107 Ariz. 498, 489 P.2d 837 (1971); *Herron v. State Farm Mutual Insurance*, 56 Cal.2d 202, 14 Cal.Rptr. 294, 363 P.2d 310 (1961). Courts have long recognized the solemn and serious contractual relationship between an attorney and client. *Herman v. Prudence Mutual Casualty Co.*, 92 Ill.App.2d 222, 235 N.E.2d 346 (1968); *Richetti v. Solomon*, 410 Pa. 6, 187 A.2d 910 (1963). And while the law does not bind a client to an attorney merely because she has entered into a contingent fee contract, the Court will vigorously protect this contractual

13. See Dawson, *Estoppel and Statutes of Limitation*, 34 *Mich.L.Rev.* 1, cases collected in 44 A.L.R.3d 482, 43 A.L.R.3d 429, 43 A.L.R.3d 756, 24 A.L.R.2d 1413.

14. The Tennessee Treble damage statute reads as follows: "47–15–113. Procurement of breach of contracts unlawful—Treble damages—It shall be unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any

lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of said contract; and that the party injured by such breach may bring his suit for said breach and for such damages." (Acts 1907, ch. 154, § 1; Shan., § 3198a8 mod. Code 1932, § 7811; T.C.A. (orig. ed.), § 47–1706.)

relationship when a third party wilfully interferes with this relationship by inducing the plaintiff-client to discharge her attorney and settle with the third party. Therefore, the Court finds that the defendant induced the breach of said contract between Jackson and Edwards.

■ 7. Travelers further asserts that Jackson's alleged verbal contract contained no provision as to who would be liable for any expense incurred in prosecuting the case and the lack of this provision is contrary to Disciplinary Rule 5–103–B of the Code of Professional Responsibility of the American Bar Association,[15] thereby making the contract void, or unenforceable as against public policy.[16] Liability for interference with an attorney-client contract depends upon the validity of the contractual relationship, and there can be no liability for interfering with a contract which is invalid, unfair, against public policy, or otherwise unenforceable or unconscionable. *Watts v. Warner*, 151 Tenn. 421, 426, 269 S.W. 913 (1924). Based on the evidence, the Court finds that the contract entered into by Jackson and Edwards was a lawful attorney-client contract and did not violate DR 5–103–B.

8. Finally, the defendant contends that in the event the action of Travelers prior to the settlement in August of 1972, constituted an inducement of the breach of Jackson's contract with Mrs. Edwards authorizing statutory treble damages, Jackson's claim is barred by the one year statute of limitations, T.C.A. § 28–304. For the reasons previously discussed *supra,* the Court is of the opinion that the defendant is estopped to plead the statute of limitations.

■ 9. In a case of this nature, there looms the opportunity for a defendant insurance company to exert considerable pressure on an individual to enter into a settlement agreement. Factors such as the plaintiff's particular susceptibility and the defendant's superior bargaining position should be considered in determining whether there has been over-reaching conduct on the part of the defendant. In this type of business relationship the law requires, that when an insurance adjustor negotiates with an injured claimant pertaining to a release and settlement, the insurance representative must act in good faith in negotiating the release. *Fletcher v. National Life Insurance Co.,* 10 Cal.App.3d 376, 89 Cal. Rptr. 78, 93 (1970); *Western Casualty and Surety Company v. Fowler,* 390 P.2d (Wyo.1964).[17] This standard of fair dealing in the handling of claims is paramount to this type of relationship. Based on the evidence presented at trial, the Court finds that plaintiffs are entitled to relief. Count One of the Edwards' complaint requests damages both compensatory and punitive. Count Two of the complaint seeks compensatory damages for mental anguish. The Court feels that damages should be awarded and that they are punitive in nature. The Court therefore awards to the plaintiff Edwards damages in the amount of $284,974.35 against which is to be credited under the Tennessee Statute the $34,974.35 which has been paid, making a net award to the plaintiff Edwards of $250,000.00.

15. DR 5–103 Avoiding Acquisition of Interest in Litigation . . . . . . (B) While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expense of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remain ultimately liable for such expense.

16. The defendant also avers that due to this unenforceable contract the plaintiff Jackson cannot seek damages under T.C.A. § 47–15–113, since the treble damages statute is applicable only to the procurement of a lawful contract.

17. See cases collected in 39 A.L.R.3d 739. See also, Kennan and Gillespie, *The Insurer and the Tort of the International Infliction of Mental Distress, Fletcher v. Western National Life Insurance Company, Ins. Counsel J.* 335 (1972).

I do not think that the treble damage statute is applicable insofar as to Jackson. I feel that the insurance company fraudulently interfered with his relationship as attorney for Mrs. Edwards, that he was damaged and that he should be compensated. The Court therefore awards the plaintiff Jackson damages in the amount of $1,000.00.

Judgment in accordance herewith will be entered.