## GORDON PIPKIN v. CURTIS LENTZ.—354 S. W. (2d) 87.

Middle Section.   April 7, 1961.

Petition for Certiorari Denied by Supreme Court, July 26, 1961.

Thurman Thompson, Lewisburg, for plaintiff.

J. Shelby Coffey, Jr., Columbia, for defendant.

SHRIVER, J.  The parties will be referred to as complainant and defendant as they appeared in the Court below.

## I

The defendant, Gordon Pipkin, seeks to have two separate conveyances of real estate declared void for fraud and for such inadequate consideration as to shock the conscience of the Court.

As is alleged in the bill, the complainant was born Gordon Howell but on February 7, 1939 he was adopted by Homer F. Pipkin and wife Louise Pipkin and his name changed to Gordon Pipkin.

It is alleged and shown that in January 1947 Louise Pipkin acquired the real estate involved in this litigation by warranty deed from C. W. Brewer and wife and the deed was recorded in Maury County.  Thereafter, on December 10, 1947, the said Louise Pipkin died intes-

tate seized and possessed of this real estate and complainant Gordon Pipkin was her only heir at law. One child was born to Homer F. and Louise Pipkin but it lived only a few hours, therefore Gordon Pipkin, took the real estate subject to the curtesy right of Homer F. Pipkin who is still living.

It is alleged and shown that the land in question is a 65 acre tract in Maury County which was purchased by Louise Pipkin for $9,000.00 in January 1947. It is further alleged that the defendant, Curtis Lentz, procured and persuaded the complainant, a minor, 19 years of age to file a petition in the Chancery Court of Maury County to have his disability of minority removed and, as a result, a decree generally removing his disability of minority was entered on April 19, 1954.

It is alleged that on the following day, April 20th, 1954, said defendant persuaded complainant to execute and deliver to him a deed purporting to convey to the defendant seven acres of the 65 acre tract of land inherited from Louise Pipkin, for a consideration of $1,200.00. Said deed was noted for registration at 9:20 A.M. on April 21, 1954 and is set out in the original bill. It covenants that complainant was lawfully seized and possessed of the described real estate, had a good legal right to sell and convey same, and that it was unincumbered.

It is further alleged that on November 29, 1955, defendant, Curtis Lentz, persuaded complainant to execute and deliver to him a deed to his interest in the remaining part of the 65 acres subject to the life estate of Homer F. Pipkin, the recited consideration in said deed is $10.00 and other good and valuable considerations,

but it is shown in the proof that the actual consideration was $550.00.

It is to be noted that in said latter deed it is recited,

"I, Gordon Pipkin, a single person now residing in the State of Texas, have bargained and sold and by these presents do hereby sell, transfer and convey unto Curtis Lentz his heirs and assigns all right, title and interest, being a one-half share and interest in and to a certain tract or parcel of land situated in the Ninth Civil District of Maury County, State of Tennessee, and bounded and described as follows;" (Here follows the description by metes and bounds)

It is, thus, insisted by complainant that, in any event, he only conveyed a one-half interest in the 58 acre tract conveyed by the second deed hereinabove described.

The last paragraph of the bill summarizes as follows:

"Complainant alleges and avers that the conduct of the defendant in pursuading and procuring the removal of his disability of minority and then while under twenty-one years of age, and without judgment or business experience, pursuading him to execute and deliver to defendant the two deeds hereinbefore copied for such an inadequate consideration, constitutes fraud."

The prayers of the bill are (1) for subpoena; (2) that the deeds from the complainant to the defendant be cancelled and declared void upon the payment to the defendant of the amount of the actual consideration therefor or upon such other terms as the Court might consider just and equitable; (3) that, in any event, the

rights and interests of the parties be determined and judicially declared and that the 65 acres be sold by Court order on such terms as are just and equitable and the proceeds divided as determined by the Court; (4) for general relief.

A demurrer to the bill was overruled except as to the ground which pointed out that the bill on its face did not allege particular acts or facts and circumstances as constituting fraud. As to this ground the Court required the bill to be amended in order to cure said defect. The amendment to the original bill avers that Curtis Lentz knowing that the complainant was a minor without much education and with little or no business judgment or experience, and without knowledge of the true value of the real property that he had inherited from Louise Pipkin, and knowing that said real estate was very valuable, and scheming and planning to defraud complainant out of his said inheritance, did fraudulently and corruptly procure and persuade said Homer F. Pipkin to file a petition to have his disability of minority removed and, thereafter, fraudulently and corruptly procured and persuaded complainant to execute and deliver to him a deed purporting to convey to said defendant seven acres of land described in the bill for a consideration which the defendant knew at the time was only a small fraction of its true value.

The answer of the defendant to the original and amended bills denied all allegations of fraud and of inadequate consideration.

The case was heard by the Chancellor on depositions and documentary evidence and resulted in a decree in which the Chancellor found as follows:

"This cause came on for final hearing on this, the 5th day of August, 1960, before the Honorable Knox Bigham, Chancellor, upon the original bill, demurred thereto, the amended bill, the answer of the Defendant to both the original and amended bills, the depositions and exhibits on file and the entire record in the cause and, after hearing all of the proof read and argument of counsel, the Court is of the opinion that the Complainant did not introduce any proof of actual fraud on the part of the Defendant and the purpose of the petition for the removal of the disability of minority of Complainant was so that Complainant could pursue his claim against the East Tennessee Natural Gas Company and the proof does not show any persuasion, procurement or deception on the part of the defendant in the filing and obtaining of the removal of the disability of minority of Complainant; that the Defendant had optioned a total of 255 acres for sale at a price of $260.00 per acre and two-thirds of the value of the fee simple interest in seven acres was paid Complainant upon his execution of the deed dated April 20, 1954, for his remainder interest in the seven acres and, consequently, did not constitute grossly inadequate consideration, as alleged; that, in regard to the deed executed by Complainant on November 29, 1955, for his remainder interest in the remaining 58 acres, the preponderance of the evidence is that the consideration paid was $550.00, that Complainant was not inequitably treated in the transaction and he was the moving party in the sale of his remainder interest in the 58 acres and should have had some conception of

its value since he had previously made a sale of seven acres for $1,200.00; and the Court is further of the opinion that the deed dated November 29, 1955, executed by Complainant to Defendant, conveyed all of the right, title, interest and estate of the Complainant in said 58 acres and not a mere one-half undivided interest as alleged by Complainant; and that the allegations of the original and amended bills are not sustained by the proof and should be dismissed.''

## II

It was asserted in the pleadings and shown in the proof that the complainant, Gordon Pipkin, left home when he was about seventeen years of age and obtained work in Texas, thus, he had been away from Columbia, Tennessee for a number of years and was employed by the United States Steel Company in Lubbock, Texas, when he returned to Columbia in April 1954 on a visit.

He found that the East Tennessee Natural Gas Company had run two gas transmission lines across the 65 acre tract and, upon telling the defendant, who was a friend of many years standing, about this and that he had never been paid for the running of the lines across the land, defendant recommended that he see Mr. J. Shelby Coffey, Jr., an attorney, and have him look into the matter. Mr. Coffey's investigation revealed that the boy's father, Homer F. Pipkin had executed a right-of-way easement to the Gas Company in July 1950 for a consideration of $46.50, and in July 1953 another 50 foot easement for a consideration of $214.00. Mr. Coffey advised complainant that he had a legitimate claim

against the Gas Company and agreed to and did write to said company in Knoxville, Tennessee, demanding damages in the amount of $3,000.00 on behalf of complainant.

Upon advice of Mr. Coffey a petition was filed to remove the disability of minority of the complainant in order that he would have authority to settle his claim against the Gas Company which claim was subesquently settled for $1,500.00.

It was shown to the satisfaction of the Chancellor in the instant case that the defendant had nothing to do with the removal of the disability of minority of the complainant and that the allegations of fraud in that respect were not sustained by proof.

In this conclusion, we concur.

It is further shown that the complainant approached the defendant on April 20, 1954 offering to sell him the 65 acre tract of land giving as his reason that he intended to live in Texas and did not expect to move back to Tennessee. The defendant suggested to him that he sell it to his father, Homer F. Pipkin, and was told by complainant that Homer Pipkin had offered him $500.00 for his interest in the 65 acre tract. Complainant then asked defendant what he would give for the seven acre tract which adjoined defendant's property and on which there were no improvements. Defendant told him he would give him $1,200.00 for the seven acre tract and suggested that he might try to sell it to somebody else and if he could get more than that he should do it. Complainant left and later returned stating that he had asked a number of people about the price and had concluded

that $1,200.00 for the seven acres was a good price. Defendant, thinking that complainant owned the fee in said property and that his father had no life estate because it was thought that there had been no children born to him and Louise Pipkin, agreed to and did pay the complainant $1,200.00 for the seven acres of land.

It was later learned that there had been a baby born to Homer and Louise Pipkin and said baby had lived for only a few hours but, by reason of this fact, Homer Pipkin had a curtesy interest in the real estate, hence, defendant could not get possession of the land purchased from complainant.

After receiving the $1,200.00 complainant insured the dwelling and barn on the remaining 58 acres, bought a 1951 Ford automobile and drove away to Texas.

Defendant heard nothing from the complainant until he (Complainant) returned to Columbia, Tennessee, in November 1955, at which time he approached the defendant and offered to sell him his interest in the remaining 58 acres. But defendant told complainant that he could not get possession of it because of the life estate of Homer F. Pipkin and suggested that he had better sell it to his father. Complainant returned later and told defendant that his father refused to purchase any interest that he might have in it and inquired as to what defendant would give him for his remainder interest, or fee, in said property.

Defendant pointed out to him that Homer F. Pipkin appeared to be in good health and might live for a number of years and might, in fact, out live defendant and that, since he could not get possession of the prop-

erty until the death of Homer F. Pipkin, he would give him $500.00 for his interest. Complainant agreed to this and a deed was prepared and delivered and the said amount paid, along with the cancellation of a $50.00 debt that complainant already owed the defendant.

It is shown that the defendant had worked and made his own way for some time before the transaction complained of. Several real estate men testified that the reasonable value of the property, if possession could be delivered at the time of the transaction, was about $150.00 per acre. Some estimates were lower than this and one, at least, was about $200.00 an acre.

Complainant was asked on cross examination if it was not a fact that from April 20, 1954, the date he executed the first deed until the bill in this case was filed in 1959, he never made any complaint to Mr. Lentz about the price he received for the property, and he answered that this was true.

He was again asked if it was not true that when the subject was brought up Mr. Lentz told him that he could not get possession of the land until Homer F. Pipkin's death and that is why he should sell it to Homer, and the complainant answered, "Yes, sir."

He further testified;

"Q. Well whatever price was suggested, I ask you if Mr. Lentz didn't tell you to go see if you couldn't get a better price from somebody?

"A. Yes, sir.

"Q. Did he tell you on that occasion you ought to come back here, that you ought to keep that prop-

erty that you might want to come back here and live sometime?

"A. Yes."

With reference to the $1,200.00 consideration he testified:

"Q. Did you consider it a reasonable price?

"A. Well, at the time I did."

Homer F. Pipkin, the adopting father, testified that he had tried to sell Mr. Pipkin a 33 acre tract of land adjoining the defendant and offered it to him for $2,000.00, but that Pipkin declined to take it.

There are two significant facts which have led the complainant and his counsel to insist that there was fraud in this transaction and that the complainant was overreached by a skilful real estate man.

The first of these facts is that defendant Curtis Lentz, after he had acquired the interest of the complainant in the 65 acres for $1,750.00, then purchased the life estate of Homer F. Pipkin in the said land paying him $6,500.00 for same. This seems to indicate that defendant did not pay complainant an adequate price for his holdings.

The second fact is that the defendant acquired from Mrs. Leonhardt a tract of 220 acres adjoining the 65 acres in question and, thereafter, an industrial committee interested in attracting industry to the area procured from defendant an option on his entire holdings, both the Leonhardt and the Pipkin properties, for $65,-000.00. It is shown that these properties lie on Duck River and on the railroad and the idea of attracting

industry developed long after the purchase by defendant of complainant's interest in the land.

Because of these latter two developments we have examined this record with a great deal of concern lest the Court lend itself to the perpetration of fraud on complainant, or lest a Court of Equity allow and sanction unconscionable conduct amounting to fraud. However, a careful examination of all the facts and circumstances leads us to the conclusion reached by the Chancellor. If this young man did, in fact, make a bad bargain, he has no one to blame but himself. The record fully sustains the contention of the defendant that it was the complainant who initiated these deals and that he was well aware of what he was doing. He had ample means and opportunity to find out whether or not the price he was being paid in each instance was adequate. The Courts should not assume a paternalistic role when the rights of persons who are sui juris are involved.

The complainant had been earning his way for several years, and, at the time of the last transaction, was almost 21 years of age and had had his disability of minority removed some two years previously. We cannot say from the proof in this record that the defendant practiced fraud upon him or tried to overreach him in these transactions.

### III

■ Without discussing each assignment of error separately it is sufficient to say that the assignment to the effect that the consideration paid was so inadequate as to shock the conscience of the Court is overruled. As was said in Mackie v. Fuqua, 14 Tenn. App. 176, mere

inadequacy of consideration is not a ground for rescission. Whenever it appears that the parties have knowingly and deliberately fixed upon any price, however great or small, there is no occasion nor reason for interference by the Courts, since the owners have a right to sell property for what they please and buyers have a right to pay what they please. See also Pomeroy's Equity Jurisprudence, sec. 927, note 3.

It is also stated by our Courts that mere weakness and indiscretion on the part of one of the parties is not sufficient for equity will not grant relief unless he can show fraud or some undue means used to draw him into an agreement.

It has been said that, to set aside a conveyance, there must be an inequality so strong, gross and manifest that it is impossible to state it to a man of common sense without producing an exclamation at the inequality of it.

It should be pointed out that the complainant testified that he had made no complaint about the transaction from April 1954 to the date of the filing of a bill in 1959.

■ In Landreth v. Shevenel, 102 Tenn. 486, 52 S. W. 148, the Court said that it is a settled rule that the right to rescind a contract for fraud must be exercised immediately on its discovery, and that any delay in doing so, and the continued employment, use, and occupation of property received under a contract, will be deemed a confirmation.

To the same effect is Woodfolk v. Marley, 98 Tenn. 467, 40 S. W. 479 and Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798.

Another assignment complains of the Court's holding that complainant was not inequitably treated in the transaction wherein he sold 58 acres of land to the defendant for $550.00.

It is pointed out that the complainant knew the interest that he had in the land and that there was a life interest held by his father. This is true because he had drawn a will in 1954 in which he referred to his remainder interest in the property. Since the purchaser could not get possession of the property during the life of Homer Pipkin it is easily seen why he was not willing to pay more for the property than he did.

As to the $1,200.00 consideration for the seven acres, it is pointed out that there is substantial proof in the record that, at the time of this sale, the property was worth from $140.00 to $200.00 an acre, thus, $1,200.00 for seven acres was not an unreasonably low price, there being no improvements on it.

The fourth assignment of error is that the trial Court erred in holding that the deed of November 1955 conveyed all the right, title and interest of the complainant in the 58 acres, and not a mere one-half undivided interest as alleged by complainant. Observing the language of the deed in question which was quoted hereinabove, it is also to be noted that the complainant testified that he thought and understood that he was selling all the interest he had in the property at the time.

In Sequatchie Land Company v. Sewanee Coal, Coke and Land Company, 137 Tenn. 313, 193 S. W. 106, the language in the deed involved therein was almost identical with the language in the deed under consideration

here. It purported to convey "All right, title, claim and interest in certain lands, . . . . . . being an undivided one-half interest."

The Pipkin to Lentz deed of November 1955 provides, "I hereby sell transfer and convey unto Curtis Lentz, his heirs and assigns, all the right, title and interest, being a one-half share and interest in and to a certain tract of land . . . . . leaving said 58 acres which is now being conveyed by this instrument."

In the Sequatchie Land Company case, supra, it was said by the Court:

"It is manifest by the words 'all right, title, claim and interest' the lands, as such, were conveyed so far as the grantor was concerned."

It is pointed out in the opinion that the appellant in that case contended that the words "being an undivided one-half interest in certain lands" served to limit the broader terms of grant that preceded them and show that a full fee was not being conveyed. The Court said, however, that the appellant overlooked the fact that the rule that an instrument should be construed against the grantor applies where the description of the quantity of the estate affected is doubtful, citing 13 C.Y.C. 636. It is also pointed out in the opinion that another principle at common law is that, where property is sufficiently described as a whole, the description is not restricted by a further general statement which may be given a construction inconsistent with the prior inclusive words of the grant, and, if a grantor conveys all his right, title, and interest and adds the words, "being a one-half undivided interest", the latter words do not limit the

extent of the previous terms of grant, or except out any interest conveyed by the earlier words conveying all interest. Citing McLennan v. McDonnell, 78 Cal. 273, 20 P. 566, and Preston & Massie v. Heiskell's Trustee, 32 Grat. (Va.) 48 and Devlin on Deeds, Vol. 2, Sec. 838a.

To the same effect is Moran v. Somes, 154 Mass. 200, 28 N.E. 152 and numerous other cases.

In LaRue et al. v. Greene County Bank, 179 Tenn. 394, 166 S. W. (2d) 1044, the Court pointed out that our Courts have long since abandoned technical rules in the construction of conveyances, and rather look to the intention of the instrument as a proper guide. Citing numerous cases.

Section 64-501 T.C.A., provides:

"Every grant or devise of real estate, or any interest therein, shall pass all the estate or interest of a grantor or devisor, unless the intent to pass the less estate or interest shall appear by express terms, or be necessarily implied in the terms of the instrument."

From all of the above, we agree with the Chancellor that the complainant conveyed all of his right, title and interest in the property under the deed of November 29, 1955.

■ As to the fifth assignment concerning the failure of the Chancellor to hold that there was proof of fraud, we point out that fraud is never presumed but must be proved.

In Bevins v. Livesay, 32 Tenn. App. 1, 221 S. W. (2d) 106, it is said that fraud involves deception and if one

knows the truth and is not deceived, he is not defrauded, and that fraud is never presumed but must be clearly proved, and the presumption is in favor of the fairness of a transaction and the innocence of the person accused. The burden of proof is on the party asserting the fraud to establish the same.

It results that the assignments are overruled and the judgment of the Chancellor is affirmed.

Hickerson and Humphreys, JJ., concur.