HELEN S. ROGERS,                    )
                                    )
          Plaintiff/Appellee,       )          Appeal No.
                                    )          01-A-01-9611-CV-00500
v.                                  )
                                    )          Davidson Circuit
TOM E. WATTS, JR.,                  )          No.    95C-1848
                                    )
          Defendant/Appellant.      )

FILED

July 2, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE THOMAS BROTHERS, JUDGE

HELEN SFIKAS ROGERS, pro se
Suite 1550
SunTrust Bank Building
201 Fourth Avenue North
Nashville, Tennessee  37219


THOMAS E. WATTS, JR., pro se
201 Fourth Avenue North
Suite 1260
P. O. Box 198494
Nashville, Tennessee  37219


AFFIRMED AND REMANDED


                              SAMUEL L. LEWIS, JUDGE

## OPINION

This is an appeal by defendant/appellant, Thomas E. Watts, Jr., from the decision of the Sixth Circuit Court of Davidson County finding Mr. Watts liable for malicious prosecution and awarding plaintiff/appellee, Helen S. Rogers, $18,000.00 in damages. The facts out of which this matter arose are as follows.

Mr. Watts and Mrs. Rogers are attorneys who were involved in a lawsuit before the United States District Court. Mr. Watts represented the plaintiffs against the defendant, Dr. Kanza. The court entered a default judgment against Dr. Kanza, and the parties began settlement negotiations with the assistance of a United States Sixth Circuit Court of Appeals attorney. Mr. Robert A. Weaver retained Mrs. Rogers to try to settle the case.

On 8 September 1992, Mrs. Rogers received a fax from Mr. Weaver which stated a Harry O'Connor in the United Kingdom was prepared to commit $75,000.00 toward a final settlement of all claims by those who had been awarded a judgment against Dr. Kanza. Working through the settlement attorney, Mrs. Rogers and Mr. Watts reached a settlement on behalf of their clients. Pursuant to the agreement, Dr. Kanza was to pay Mr. Watts' clients $65,000.00. Mr. Watts confirmed the parties' agreement by letter dated 14 September 1992.

Nothing in the settlement agreement or the letter set a deadline for payment of the monies, but Mr. Watts sought payment before 24 September 1992 in the 14 September 1992 letter. On 16 September 1992, Mrs. Rogers sent Mr. Watts a letter and enclosed the proposed settlement documents Mr. Watts had requested. The letter read: "The settlement monies are to be wire-transferred into my trust account around the first of next week and I will let you know when we can complete the settlement." When the money had not arrived on 22 September 1992, Mr. Watts wrote Mrs. Rogers and stated: "Obviously this is not a matter within your control, but my previous dealings with Mr. Kanza have destroyed all belief that he is a man of his word. If someone other than Kanza is paying the money, based on their performance to date, they are of the same bolt of cloth." Mr. Watts further stated he would disavow the settlement if the funds were not delivered to him by the next day.

Mrs. Rogers received a fax from Robert Weaver advising her that Mr. O'Connor's assistant had stated that the delay in transferring the funds was due to a drastic drop in the English pound and that O'Connor was meeting with his bank and would try to get all of it sorted out. Mr. Weaver stated he thought Mr. O'Connor would come through with the funds. Mrs. Rogers conveyed the message to Mr. Watts concerning the drop in currency and the fact the settlement monies could not be paid at that time. Mr. Watts deemed this "unacceptable."

Mr. O'Connor faxed a letter dated 24 September 1992 directly to Mr. Watts which stated: "I cannot honestly state that the English pound situation was the main cause because of the drop in exchange rates. This was not the major cause of the delay, but the fact we posted several irrevocable letters of credit in our name as security based on profit returns of subject contract." On 25 September Mrs. Rogers acknowledged the direct conversations Mr. O'Connor had with Mr. Watts and attempted to confirm that the original settlement was possible as long as it was completed in approximately two weeks.

Mrs. Rogers learned from a letter that Mr. Watts had promised the settlement monies to another person on behalf of his client and that Mr. Watts had told the creditor the money would be available by 24 September 1992. Mr. Watts' letter further stated: "In my view, I do not believe the creditor has any claim against me personally, but in the unlikely and unfortunate event that I am sued, of course, I will have no option other than to pass the responsibility on to you, and presumably, you would want to pass it on to your clients." Mrs. Rogers responded to this letter that no definite payment date had ever been given. Mr. Watts advised Mrs. Rogers that he had been sued in a letter dated 3 November 1992. He enclosed a copy of a general sessions warrant and stated, "[a]s yet, I have not decided what my response will be, but I thought I ought to keep you up to date on this development."

The general sessions court found Mr. Watts guilty of negligence and entered judgment in favor of the third party creditor. Mr. Watts appealed to the Sumner County Circuit Court and filed a third party complaint against Mrs. Rogers for fraud and fraudulent misrepresentation. At the end of the proof, Mr. Watts moved to amend the third-party complaint to include a claim of negligent misrepresentation. The

circuit court found Mr. Watts guilty of negligence, denied the motion to amend the complaint, and dismissed the third-party complaint. Mr. Watts appealed to this court which reversed and dismissed the judgment against Mr. Watts and dismissed as moot Mr. Watts's appeal of the dismissal of the third-party complaint. *McFarlin v. Watts*, 895 S.W.2d 687 (Tenn. App. 1994). The third-party creditor filed an application for permission to appeal to the Tennessee Supreme Court. The supreme court denied the application on 6 March 1995.

In the meantime, Mrs. Rogers filed a complaint for malicious prosecution against Mr. Watts in the Davidson County Circuit Court on 14 November 1994. Mr. Watts filed a motion to dismiss and argued the court should dismiss the complaint because the case which formed the basis of the claim was not final. The court granted the motion.

Mrs. Rogers re-filed her complaint in the Davidson County Circuit Court on 9 June 1995. Mr. Watts moved to strike portions of the complaint involving dealings between the parties in 1983. From 1980 to 1983, Mrs. Rogers, other attorneys, and Mr. Watts shared office space. The attorneys had agreed Mr. Watts would pay the rent and the remaining attorneys, including Mrs. Rogers, would pay the other office expenses. In 1983, the other attorneys and Mrs. Rogers learned Mr. Watts had not paid the rent for many months and the landlord had sent an eviction notice. Mrs. Rogers and the other attorneys moved out at the end of the next month and formed their own association. The court denied the motion to strike these facts from the complaint. Mr. Watts then filed a motion in limine objecting to any evidence of the parties' dealings as being to remote and not tending to prove an essential element of the claim. The court took the motion under advisement and later denied it. After a trial, the court awarded Mrs. Rogers a judgment against Mr. Watts in the amount of $18,000.00.

On appeal, Mr. Watts raises two issues. First, he contends Mrs. Rogers failed to prove each element of her claim for malicious prosecution and second, he argues the court erred when it allowed evidence of the parties' dealings in the early 1980's. We first discuss Mr. Watts's issue of whether Mrs. Rogers carried her burden of proof as to her cause of action for malicious prosecution.

This court has set out the elements necessary to establish a claim for malicious prosecution.

> In deciding a malicious prosecution case, the trier of fact need only focus on three issues: (1) were the underlying judicial proceedings initiated by the defendant finally terminated in the plaintiff's favor, would the facts and circumstances known to the defendant at the time he or she initiated the judicial proceedings have led an ordinarily prudent person to believe that the person accused was guilty of the crime charged, and (3) whether the defendant initiated the judicial proceedings against the plaintiff with malice.

*Lantroop v. Moreland*, 849 S.W.2d 793, 797 (Tenn. App. 1992) (citations omitted).


## Finality

The underlying judicial proceeding was finally terminated in Mrs. Rogers' favor. This court dismissed the underlying judicial proceeding on appeal. Additionally, Mr. Watts, in response to a question from the trial judge in the instant case, admitted he had abandoned his attempt to proceed on the fraudulent misrepresentation cause of action. A court may consider abandonment of a cause of action when determining finality. *See Christian v. Lapidus*, 833 S.W.2d 71, 74 (Tenn. 1992).


## Probable Cause

Mr. Watts bases his probable cause argument on the claim that a condition of the settlement was availability of the money. Mr. Watts admits, however, that when he sued Mrs. Rogers he assumed Mrs. Rogers knew of this condition, but Mr. Watts made this demand to Mr. Jones, Mrs. Rogers' partner, in earlier negotiations prior to Mrs. Rogers' involvement in the case. Moreover, Mr. Jones unconditionally denied he had such a conversation with Mr. Watts, and the trial court resolved this credibility issue in favor of Mrs. Rogers. Also, Mr. McFall, the settlement attorney, denied Mr. Watts' claim and stated "I have absolutely no recollection that Tom Watts ever made an issue of the availability or not of settlement funds." He further stated he did not recall Mr. Watts requiring the money be in Mrs. Rogers' escrow account as a condition of negotiating a settlement.

Mr. Watts contends in his brief Mrs. Rogers' course of conduct was fraudulent. This contention flies in the face of the requirements for fraud under the laws of this state. Mr. Watts testified in the instant case that after the general sessions court's judgment was entered against him he reviewed the situation, researched the law, and concluded Mrs. Rogers' representations were fraudulent under the law.

"Fraud is never presumed in the absence of a confidential relationship and the burden of proof is on the party asserting the fraud." *Piccadilly Square v. Intercontinental Constr. Co.*, 782 S.W.2d 178, 184 (Tenn. 1989). A plaintiff must clearly prove allegations of fraud. *Pipkin v. Lentz*, 49 Tenn. App. 206, 222, 354 S.W.2d 87, 94 (1961) (citing *Bevins v. Livesay*, 32 Tenn. App. 1, 8, 221 S.W.2d 106, 109, (1949)).

> In order to sustain a cause of action for fraudulent misrepresentation, the plaintiff must show that: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; 6) plaintiff suffered damage as a result of the misrepresentation.

*Metropolitan Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. App. 1992). Mr. Watts admitted when questioned by the trial court that this was the law.

At best, any representation made by Mrs. Rogers concerned a future fact as to when settlement monies were to be transferred into her trust account. The trial judge found Mr. Watts did not have any reasonable grounds upon which to conclude Mrs. Rogers' statements were fraudulent. The trial court stated "the evidence simply did not support such a finding but, in fact, the evidence was devoid of probable cause." We agree.

The dissent cites a portion of *Buda v. Cassel Brothers, Inc.* and concludes that Mr. Watts is not liable to Mrs. Rogers because Mr. Watts had probable cause "to seek the relief involved in the original action." We respectfully disagree with this conclusion. After making the statement quoted in the dissent, the *Buda* court continued:

> If it is established that the party instituting the proceeding reasonably believes in the existence of the facts upon which the claim is based and has reasonable belief that under those facts the claim may be valid or has reasonable belief in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information, then probable cause is established.

*Buda v. Cassel Bros., Inc.*, 568 S.W.2d 628, 631-32 (Tenn. App. 1978). As previously explained, we are of the opinion that Mr. Watts could not and did not have a reasonable belief that the claim of fraudulent misrepresentation could be valid. Thus, there was no probable cause.

## Malice

Malice may be inferred in a malicious prosecution case from the lack of probable cause; however, here, there is ample evidence from which the court could find actual malice.

Mrs. Rogers and Mr. Watts practiced law together from 1980 to 1983. They had a close business and personal relationship. Mrs. Rogers and Mr. Watts had a confrontation because of monetary considerations, and Mrs. Rogers and four other attorneys who had been practicing with Mr. Watts moved out of the office and formed their own association. Mrs. Rogers and two of the other attorneys testified as to the facts surrounding the confrontation and to the fact that after they left the office the relationship between them and Mr. Watts was very strained. This was not disputed by Mr. Watts.

In addition to the strained relationship, Mr. Watts demonstrated his anger over the failed settlement. Mr. Watts' testimony at the underlying proceeding revealed his frustration over the fact that the general sessions court entered a judgment against him.

Mr. Watts testified in the instant case that the idea of pursuing a third-party complaint against Mrs. Rogers "was not taken primarily or even secondarily or tertiarily to spite her or cause her harassment or anything of that sort, it was taken purely to protect my own pocket." The facts, however, suggest otherwise. Mr. Watts

proceeded under the theory of fraudulent misrepresentation even though he could have obtained the same recovery had he proved negligent misrepresentation. At trial, Mr. Watts admitted he could have obtained the same recovery under negligent misrepresentation and would have had a lesser burden. We can not find any evidence in the record establishing a reasonable basis for Mr. Watts' decision to file suit based on fraudulent misrepresentation rather than negligent misrepresentation. We can only infer there was no reason other than ill will. Mr. Watts also sought punitive damages in the third-party complaint against Mrs. Rogers which is more than the mere indemnity he had said he was seeking.

The dissent also raises an issue regarding the propriety of the damage award. Neither party raised this issue on appeal and we do not feel it is necessary to address the issue sua sponte. Nevertheless, we are of the opinion that the damage award was proper.

> A malicious prosecution action is one to recover damages caused by a judicial proceeding instituted with malice and without probable cause. Such damages are allowable under such an action as proximately result to the plaintiff, his person, property, or reputation from a previous unsuccessful civil or criminal proceeding which was prosecuted without probable cause and with malice.

*Ryerson v. American Sur. Co.*, 213 Tenn. 182, 185, 373 S.W.2d 436, 437 (Tenn. 1963). It is not necessary that the damages result from the particular claim; only that the result from the institution of the judicial proceeding. The damages awarded to Mrs. Rogers were a result of the institution of the action against her by Mr. Watts.

Our review of this record fails to reveal any error. Mr. Watts' first issue is without merit. Moreover, we have considered Mr. Watts' remaining issues and arguments and find them to be without merit.

Therefore, it results that the judgment of the trial court is in all respects affirmed, and the cause is remanded to the trial court for any further necessary proceedings. Costs on appeal are taxed to defendant/appellant, Tom E. Watts, Jr.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.


BEN H. CANTRELL, JUDGE,
DISSENTING IN SEPARATE OPINION