IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 23, 1998

## DELBERT STONE v. PATRICIA STONE

**Appeal from the Chancery Court for Putnam County**
**No. 94-196     Vernon Neal, Judge**

_____

**No. M1997-00218-COA-R3-CV - Filed November 9, 2000**

_____

This appeal involves a former spouse's efforts to extricate himself from the spousal support obligations contained in a marital dissolution agreement. Approximately one year after the entry of the divorce decree approving the agreement, the former husband requested the Chancery Court for Putnam County to set the agreement aside because he did not have independent legal advice and his judgment was impaired by antidepressant medication when he signed the agreement. The trial court modified portions of the decree but did not relieve the former husband of his spousal support obligation. Thereafter, the former husband filed a second motion seeking to terminate or reduce his spousal support obligations because of his former wife's improved financial circumstances. The trial court again declined to relieve the former husband of his obligation to pay spousal support. On this appeal, the former husband renews his argument that he should no longer be required pay spousal support because of his former wife's improved financial circumstance and his own weakened financial condition. We affirm the trial court's decision that the former husband has failed to prove the existence of a substantial, material change in circumstances that would warrant modifying his spousal support obligation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, Jr., J., delivered the opinion of the court, in which BEN H. CANTRELL and WILLIAM B. CAIN, JJ., joined.

J. Brent Travelsted, Nashville, Tennessee, for the appellant, Delbert Stone.

Charles L. Hardin, Cookeville, Tennessee, for the appellee, Patricia Stone.

### OPINION

Delbert E. Stone and Patricia Jackson Stone, now in their mid-fifties, were married on December 25, 1974, in North Carolina. They have one child, a son, who was born in November 1979. Professor Stone holds a doctorate degree and is an associate professor of industrial technology

at Tennessee Technological University in Cookeville. Ms. Stone holds a master's degree and works for the Tennessee Department of Human Services.

As time passed, the parties' marriage soured, and in March 1994, they filed a joint petition for an irreconcilable differences divorce in the Chancery Court for Putnam County. They stated in the petition that they contemplated entering into a marital dissolution agreement that would "adequately provide for the custody and support of the minor child and represent a fair and equitable division of the parties' property and debts." After approximately five months of direct negotiations, the parties signed a marital dissolution agreement on August 8, 1994. Both parties certified in the agreement that they fully understood its terms and they believed that they were "fair, just, and reasonable."

The spousal support provisions of the marital dissolution agreement were particularly favorable to Ms. Stone. The agreement required Professor Stone to pay Ms. Stone $900 per month in "permanent alimony, whether or not Wife remarries." It also contained provisions for adjusting Professor Stone's spousal support obligation when he was no longer required to pay child support and when he retired.[1] In addition, the agreement required Professor Stone to maintain major medical and hospitalization insurance for Ms. Stone and his son and to pay all of their medical expenses not covered by insurance.[2] Finally, the agreement provided that "[w]ife shall be the sole beneficiary of the estate of Husband in the event Husband predeceases Wife."

On August 12, 1994, the trial court entered the final divorce decree declaring the parties divorced from each other and incorporating the parties' marital dissolution agreement. This order was prepared for entry by the lawyer who had undertaken to represent both parties from the inception of the divorce proceeding.

Professor Stone eventually had second thoughts about the marital dissolution agreement and consulted another lawyer. On July 11, 1995, nearly one year after the entry of the final divorce decree, he filed a motion under Tenn. R. Civ. P. 60.02(1) & (2) seeking relief from the decree. Referring to the marital dissolution agreement as an "egregious document," Professor Stone asserted that he was entitled to relief because he had been taking an antidepressant during the 1994 negotiations with Ms. Stone that impaired his ability to comprehend the consequences of the agreement. He also asserted that the lawyer who represented both him and Ms. Stone in 1994 had not provided him with appropriate independent legal advice.

The trial court held a hearing regarding Professor Stone's motion on August 11, 1995. Based on the testimony and other evidence presented at this hearing, the trial court entered an order on September 8, 1995, declining to relieve Professor Stone of his spousal support obligation. However,

---

[1] The agreement provided that Professor Stone's monthly spousal support payments would be increased by 25% to $1,125 when his child support obligations ceased and that Ms. Stone would be entitled to 50% of his retirement benefits after he retired.

[2] This obligation ended for the parties' son when he reached 24 years of age or completed college but continued for Ms. Stone for the rest of her life.

the trial court modified the agreement in two particulars.  First, the court determined that Professor Stone would not be required to continue paying spousal support if Ms. Stone remarried.  Second, the trial court removed from the agreement the provision making Ms. Stone the sole beneficiary of Professor Stone's estate should he predecease her.  The trial court also found as a fact that the parties had done most of their own negotiating and that the lawyer who represented them at the time had acted competently and ethically.  Professor Stone attempted to appeal this decision; however, this court dismissed his appeal for failure to comply with Tenn. R. App. P. 24.  *Stone v. Stone*, No. 01A01-9601-CH-00009 (Tenn. Ct. App. Feb. 21, 1996).

In April 1996, two months after the dismissal of his appeal, Professor Stone filed another petition in the trial court seeking either to terminate or reduce his spousal support obligations.  On this occasion, he asserted that there had been a material change in the parties' circumstances since the entry of the divorce decree that warranted granting him relief from the obligations he had agreed to assume in August 1994.  The material change of circumstances on which Professor Stone relied was his belief that Ms. Stone was "fully rehabilitated" and that she had "accumulated a substantial savings" since the divorce.  For her part, Ms. Stone denied that there had been a material change in the parties' circumstances and counterclaimed for alleged arrearage in child support, spousal support, medical payments, and insurance premiums.

The trial court held yet another hearing on March 25, 1997.  During this hearing, the parties introduced evidence that Ms. Stone had used the proceeds from the sale of the home she had received as part of the agreed upon division of martial property to purchase two pieces of real property valued at $231,900.  Evidence was also presented that Ms. Stone had approximately $25,000 in her savings account and that her salary had increased from $17,864.01 to $20,120.53.  Professor Stone testified that he had since remarried and provided tax returns showing that he had $52,150 in taxable income in 1995.  On May 2, 1997, the trial court entered an order denying Professor Stone relief from the spousal support obligations.[3]  Professor Stone thereafter filed a Tenn. R. Civ. P. 59 motion seeking a new trial based on the fact that his current wife had lost her $45,000 per year job "causing him serious financial problems."  On August 13, 1997, the trial court entered an order denying Professor Stone's request to consider post-judgment facts and motion for a new trial.  Professor Stone has now perfected this appeal.

## I.

Professor Stone argues that there are two reasons why the trial court erred by denying his request to terminate or reduce his spousal support obligation.  First, he asserts that Ms. Stone no longer needs support because of her improved financial circumstances.  Second, he asserts that he is no longer able to pay the amount of spousal support he had agreed to pay in 1994 because his current wife has lost her job.  Like the trial court, we have concluded that neither claim provides a basis for triggering a reconsideration of Professor Stone's spousal support.

---

[3]The trial court did order Ms. Stone to pay Professor Stone $1,150 representing an overpayment of dental insurance premiums and to return certain photographs and other family items.

## A.

A marital dissolution agreement is nothing more than a contract between spouses who are contemplating a divorce. *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998). It is not binding on the trial court where the divorce is pending. *Youree v. Youree*, 217 Tenn. 53, 58, 394 S.W.2d 869, 871 (1965). Thus, a trial court is free to satisfy itself that the terms of a marital dissolution agreement are appropriate and fair and may accept or reject a marital dissolution agreement based on the court's understanding of the parties' circumstances.[4] Even after a marital dissolution agreement has been approved and incorporated into the divorce decree, it does not prevent the trial court from considering matters that remain, as a matter of law, within the court's jurisdiction.[5]

Spousal support is one of the subjects that remains within a trial court's jurisdiction even after the entry of a marital dissolution agreement containing spousal support provisions. A marital dissolution agreement does not divest the trial court of its power under Tenn. Code Ann. § 36-5-101(a)(1) (1996 & Supp. 1999) to modify a spousal support award if the circumstances warrant it. *Thomas v. Thomas*, 46 Tenn. App. 572, 575-76, 330 S.W.2d 583, 585 (1959).[6] However, when a spousal support provision is the result of arm's length bargaining between the parties, the courts will be reluctant to disturb it because it was most likely part of the inducement or consideration for other provisions in the marital dissolution agreement which may have become unmodifiable. *Lampley v. Lampley*, No. 01A01-9708-CH-00423, 1998 WL 44398, at *4 (Tenn. Ct. App. Feb. 6, 1998), *perm app. denied* (Tenn. July 27, 1998).

Spousal support provisions, whether agreed to by the parties or fashioned by a court, are not subject to revision for just any reason. Tenn. Code Ann. § 36-5-101(a)(1) states that they can be modified "only upon a showing of a substantial and material change of circumstances." In order to be "substantial and material," the circumstance must involve something that the parties either did not or could not have reasonably contemplated when the divorce decree was entered. *Givler v. Givler*, 964 S.W.2d 902, 906 (Tenn. Ct. App. 1997); *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990); *Curtis v. Curtis*, No. 01A01-9810-CV-00566, 1999 WL 652000, at *2 (Tenn. Ct. App.

---

[4]Because a marital dissolution agreement is the product of bargaining between the parties themselves, trial courts may not make material or substantive changes in a marital dissolution agreement without both parties' consent. If the parties do not agree with a material or substantive modification proposed by the trial court, the trial court should simply decline to approve the agreement and should explain to the parties why it is doing so.

[5]There are, of course, matters that are not subject to modification after a divorce decree becomes final. These matters include (1) the classification and division of marital property, *Towner v. Towner*, 858 S.W.2d 888, 892 (Tenn. 1993); (2) awards of alimony in solido, *Day v. Day*, 931 S.W.2d 936, 939 (Tenn. Ct. App. 1996); *Brewer v. Brewer*, 869 S.W.2d 928, 935 (Tenn. Ct. App. 1993); and (3) child support obligations beyond those that the trial court could order, *Duck v. Howell*, 729 S.W.2d 110, 113 (Tenn. Ct. App. 1986).

[6]Tenn. Code Ann. § 36-5-101(a)(1) specifically provides that orders or decrees involving spousal support "remain in the court's control."

-4-

Aug. 27, 1999) (No Tenn. R. App. P. 11 application filed).[7] The circumstance must also relate either to the obligor spouse's ability to pay spousal support or to the obligee spouse's need for spousal support. *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

The party seeking to modify an existing spousal support arrangement has the burden of demonstrating that there has been a substantial and material change in the parties' circumstances and that the requested modification is warranted. *Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). If the party seeking the modification meets his or her burden, then the trial court must utilize the factors in Tenn. Code Ann. § 36-5-101(d)(1) to determine how the spousal support obligation should be modified. *Sannella v. Sannella*, 993 S.W.2d at 76; *Brewer v. Brewer*, 869 S.W.2d at 936. Based on our review of this record, we have determined that Professor Stone has not carried his threshold burden of demonstrating that either his or Ms. Stone's circumstances have changed substantially and materially since the entry of the original divorce decree in 1994.

**B.**
**MS. STONE'S CURRENT FINANCIAL CIRCUMSTANCES**

Professor Stone bases one of his substantial and material change of circumstances claims on Ms. Stone's current financial circumstances. He asserts that she no longer needs spousal support because she has rehabilitated herself financially, as evidenced by the property she owns, her salary, and the balance in her savings account. These circumstances do not provide a basis for reopening the question of Professor Stone's spousal support obligation because each of them could reasonably have been foreseen by the parties when they divorced in 1994.

As part of their 1994 marital dissolution agreement, Ms. Stone received the parties' residence on North Dixie Avenue. Following the divorce, Ms. Stone sold the property at a favorable price and used the proceeds to purchase two other pieces of real property, both of which are now unencumbered. While Ms. Stone may have received more for the house than what Professor Stone thought it was worth in 1994, both parties could easily have foreseen that Ms. Stone might elect at some point to sell some of the real property she received in the divorce and that she might benefit from the favorable housing market in the Cookeville area. Thus, Ms. Stone's sale of the parties' home and her reinvestment of the proceeds into other real property does not constitute a substantial and material change in circumstances.

We reach a similar result when we consider the modest increase in Ms. Stone's income. She continues to work for the Tennessee Department of Human Services, just as she did when the parties were divorced. She has received modest cost-of-living raises since the divorce. Both parties could, and most likely did, anticipate that Ms. Stone would continue to be employed following the divorce and that she would continue to receive the same cost-of-living raises received by other state employees. An increase in a recipient spouse's income, without more, does not trigger a

---

[7]This requirement is also expressed in terms of foreseeability. Thus, some courts have stated that the change of circumstances must not have been reasonably foreseeable at the time of the decree. *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); *Elliot v. Elliot*, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991).

reconsideration of spousal support. *McCarty v. McCarty*, 863 S.W.2d at 720; *Jones v. Jones*, 784 S.W.2d at 353.

Finally, we turn to the fact that Ms. Stone had approximately $25,000 in savings at the time of the 1997 hearing. This too is not a substantial and material change of circumstances because the parties could reasonably have foreseen that Ms. Stone would be required to be frugal with her resources after being divorced following a twenty-year marriage. In light of the other property she received as a result of the marital dissolution agreement, it is not surprising that Ms. Stone has been able to maintain and accumulate some liquid assets.

## C.
### PROFESSOR STONE'S CURRENT FINANCIAL CONDITION

Professor Stone also asserts that his financial circumstances took an unexpected turn for the worse when his new wife lost her $45,000 per year job. He asserts that the loss of this income has caused him serious financial problems, and therefore, that it should trigger a reconsideration of his spousal support obligation to Ms. Stone. While his new wife's loss of employment may very well be unanticipated, we have concluded that it does not provide a basis for terminating or reducing Professor Stone's spousal support.

We have no doubt that Professor Stone's finances became strained when his new wife lost her job. However, this unfortunate occurrence does not qualify as a substantial and material change in circumstances. The voluntary assumption of new financial obligations following a divorce do not amount to a substantial or material change in circumstances for the purpose of Tenn. Code Ann. § 36-5-101(a)(1). *Sannella v. Sannella*, 993 S.W.2d at 76; *Jones v. Jones*, 784 S.W.2d at 353. Such voluntarily assumed obligations include remarrying, having later children, purchasing a home, and moving to another state. *Turnage v. Turnage*, No. 01A01-9409-CV-00424, 1995 WL 89778, at *2 (Tenn. Ct. App. March 1, 1995) (No Tenn. R. App. P. 11 application filed); *Elliot v. Elliot*, 825 S.W.2d at 91-92.

When Professor Stone first agreed to pay Ms. Stone long-term spousal support in 1994, he was certainly not married. Therefore, the amount of support he agreed to pay was based on his salary alone. In light of his 1994 salary, Professor Stone agreed to pay Ms. Stone $900 per month and to increase this amount to $1,125 when the parties' son completed his education. Professor Stone was earning $52,150 per year in 1995, and there is no evidence that his salary had declined since 1994. Accordingly, based on Professor Stone's salary alone, the amount of his spousal support is appropriate. The salary or lack of salary being earned by Professor Stone's new wife has no direct bearing on Professor Stone's continuing spousal support obligation.

## D.
### THE NATURE OF MS. STONE'S SPOUSAL SUPPORT

Finally, Professor Stone argues that his support obligation should be terminated or reduced because the Legislature has now expressed a preference for rehabilitative alimony. He asserts that

Ms. Stone is more than capable of rehabilitating herself financially, and therefore, that she was not a candidate for long-term spousal support. Professor Stone overlooks the fact that he agreed to support Ms. Stone on a long-term basis.

Tennessee's divorce statutes had reflected a preference for rehabilitative support for ten years by the time the parties began negotiating their marital dissolution agreement in 1994.[8] Notwithstanding this preference, spouses may still receive long-term support when the circumstances warrant it. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991). In light of the duration of the parties' marriage, their educational attainments, the respective ability to earn money and accumulate assets, it was not unreasonable in 1994 for Ms. Stone to seek, and for Professor Stone to agree to pay, long-spousal support. Professor Stone cannot now seek to recharacterize Ms. Stone's support in light of current circumstances. As we observed almost forty years ago, if Professor Stone made a bad bargain "he has no one to blame but himself.. . . The Courts should not assume a paternalistic role when the rights of persons who are sui juris are involved." *Pipkin v. Lentz*, 49 Tenn. App. 206, 217, 354 S.W.2d 87, 92 (1961).

## II.

We affirm the trial court's denial of Professor Stone's petition to terminate or reduce his spousal support obligation and of his motion for a new trial and consideration of post-judgment facts, and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Delbert Stone and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[8] The express preference for rehabilitation in Tenn. Code Ann. § 36-5-101(d)(1) was contained in Act of May 9, 1984, ch. 818, § 3, 1984 Tenn. Pub. Acts 658, 659.